1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8   KARL MURRAY TOBEY,

9                              Petitioner,          Case No. C12-440-RAJ-JPD

10        v.

11   JEFFREY UTTECHT,                                REPORT AND RECOMMENDATION

12                              Respondent.

13

14                 INTRODUCTION AND SUMMARY CONCLUSION

15        Petitioner is a state prisoner who is currently confined at the Coyote Ridge Corrections

16   Center in Connell, Washington.  He has filed a petition for writ of habeas corpus under 28 U.S.C.

17   § 2254 seeking relief from a 2005 King County Superior Court judgment and sentence.

18   Respondent has filed an answer to the petition and has submitted relevant portions of the state

19   court record.  Petitioner has filed a response to respondent's answer.  The Court, having carefully

20   reviewed the petition, the briefs of the parties, and the state court record, concludes that

21   petitioner's federal habeas petition should be denied and this action should be dismissed with

22   prejudice.

23

REPORT AND RECOMMENDATION - 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

# FACTUAL BACKGROUND

The Washington Court of Appeals, on direct appeal, summarized the facts relevant to petitioner's case as follows:

> Jason Fults and Jennifer Fults had a daughter, MF.  They divorced when MF was three years old.  After the divorce, MF lived with her mother and brother until she was eight years old, at which time she moved in with her father and his fiancée, Leilani Smith.
>
> Relations between MF and Leilani were not always smooth, although in the beginning, they got along well.  One evening in December 2003, Leilani was having a particularly hard time with what she described as MF's "attitudes and her fits and just being a little brat."  Leilani was concerned that she might be unintentionally antagonizing MF, and pressed MF repeatedly to tell her if she was doing something to make her mad.  MF kept assuring her there was nothing wrong.  Then, after Leilani abandoned the discussion and resumed reading a book, MF said, "my dad was right about Karl," referring to the appellant, Karl Tobey.  Both Leilani and MF knew that her father did not trust Tobey.
>
> Leilani asked her what she meant.  MF was silent for a minute and then began to cry.  Struggling to catch her breath, she told Leilani, "He took me in his room and licked my privates."
>
> Jason Fults called the police, and on their advice he and Leilani took MF to a hospital for examination.  The following morning, they met with the Seattle police.  MF was subsequently interviewed by a child interview specialist.  The interview, during which MF described how Tobey raped her, was recorded on DVD.  The DVD was later played for the jury.
>
> MF was also examined at the King County Sexual Assault Resource Center.  During that examination, which was medically inconclusive, MF told the examining nurse that Tobey had licked her privates and put his "thing" in her "thing."  She also told the nurse that she sometimes felt sore, "because of what happened."
>
> Detective Donna Stangeland of the Seattle Police Department observed MF's interview by the child interview specialist, and determined that there was probable cause to arrest Tobey.  She and another detective went to Tobey's apartment to make contact with him.  Although Tobey's car was parked in front and the detectives could hear movement inside his apartment, their repeated knocks on his door went unanswered.  Later that afternoon, Detective Stangeland left a voice mail message for Tobey, asking him to call her immediately.  The

REPORT AND RECOMMENDATION - 2

following morning, she found that Tobey had returned her call the previous evening, and left three messages for her.

Tobey called the detective again that morning.  During that brief call, Detective Stangeland informed Tobey that he was a suspect in a crime, that she anticipated a warrant being issued for his arrest in the near future, and suggested he make arrangements to turn himself in.  Tobey was arrested later that day by patrol officers.

Tobey was charged with three counts of first degree rape of a child.  Following trial, the jury was unable to reach a unanimous verdict, and the court declared a mistrial.  He appeals from his second trial.

MF was a preschooler when she first met Tobey.  She, her brother, and her mother moved into an apartment complex in Kent where Tobey was living.  MF's mother, Jennifer Fults, soon developed a romantic relationship with Tobey.  While their romantic relationship lasted only a few months, they remained friends.

Tobey was very involved in the children's lives.  He would baby-sit them, and take them swimming.  He took them to the store, to movies, parks, and entertainment centers.  He often bought MF gifts, including toys, books, a radio, a journal, and clothing.  Once he bought her Capri pants and a top.  Her father and Leilani considered the clothes too skimpy and revealing, and would not allow her to wear them.

Even after Tobey moved to an apartment in Ballard, he continued to visit MF, taking her out and giving her presents.

At Tobey's second trial, MF testified that Tobey had raped her "a lot – whenever we were over at his house."  She said she had been to his apartment about nine or ten times altogether.  She had been there with her mother about two or three times, and occasionally with her brother as well.

She described how Tobey would take her into his bedroom, put her on his bed and touch her "private areas" with his hands and mouth.  When asked what she meant by "private areas," she indicated her crotch and chest.  She told the court how Tobey would take his pants down so that she could see his privates, and how he would put his privates into her privates.  She described it as weird and painful.  When he would put his mouth on her privates, she said it did not hurt but still felt weird.

As MF described it, Tobey would lie on his back on the bed, and have MF straddle him as he held her legs.  She said that was the way he always put his privates into hers.  Although she could not remember how many times he had

REPORT AND RECOMMENDATION - 3

done so, she said it was more than four.  MF was able to recall one specific incident around Thanksgiving of 2002, when the defendant took her to a movie called Brother Bear, then to Toys-R-Us where he bought her more gifts, and from there to his apartment where he raped her again.  She could not remember the first time it happened, but all the incidents occurred before she moved in with her father and Leilani when she was eight.

Tobey did not testify at his second trial.  He was convicted on counts I and II, acquitted on count III, and was sentenced to 120 months confinement.

(Dkt. No. 18, Ex. 5 at 1-5.)

PROCEDURAL BACKGROUND

Petitioner appealed his judgment and sentence to the Washington Court of Appeals.  (*Id*., Exs. 2 and 3.)  In petitioner's opening brief on appeal, petitioner's appellate counsel argued that (1) several incidents of prosecutorial misconduct denied petitioner a fair trial, (2) several state's witnesses improperly vouched for the victim's credibility, (3) the evidence was insufficient to support the second conviction, (4) the judge improperly commented on the evidence by performing a perfunctory competency exam on the victim in front of the jury despite the parties' prior stipulation, (5) the lead detective improperly commented on petitioner's pre-arrest silence, and (6) the cumulative effect of the multiple errors denied petitioner a fair trial.  (*See id*., Ex. 2.)

Petitioner also submitted a statement of additional grounds in which he argued that (1) additional incidents of prosecutorial misconduct denied him a fair trial, (2) the trial court erred in allowing the state to use leading questions during direct examination of the victim, (3) the trial court gave an unconstitutional reasonable doubt instruction, (4) multiple state's witnesses improperly vouched for the victim's credibility, (5) the lead detective committed witness misconduct during cross-examination, and (6) the evidence was insufficient to support the second conviction.  (*See* Dkt. No. 18, Ex. 3.)  On June 4, 2007, the Court of Appeals issued an

REPORT AND RECOMMENDATION - 4

unpublished opinion affirming petitioner's conviction on two counts of first degree child rape.

(Dkt. No. 18, Ex. 5.)

Petitioner next filed a petition for review in the Washington Supreme Court. (*See id.*, Ex. 6.) Petitioner, through counsel, presented the following four issues for review:

> 1. Whether prosecutorial comments misstating the role of the jury and referring to the child victim's lost innocence were flagrant and ill-intentioned, requiring reversal?

> 2. Whether the Court of Appeals erred in concluding the State's reliance on undifferentiated evidence violated [sic] Tobey's constitutional rights to a unanimous jury verdict, to present a defense, and to be free from double jeopardy?

> 3. Whether the prosecutor committed misconduct by vouching for the complaining witness and violating a motion in limine precluding the prosecutor from questioning the detective about Tobey's prearrest silence?

> 4. Whether the cumulative effect of the above errors deprived Tobey of his constitutional right to a fair trial?

(*Id.*, Ex. 6 at 2.) On April 29, 2009, the Supreme Court denied the petition for review without comment. (*Id.*, Ex. 7.)

In June 2010, petitioner filed a personal restraint petition in the Washington Court of Appeals. Petitioner argued in his petition that (1) multiple incidents of prosecutorial misconduct denied him a fair trial, (2) trial counsel rendered ineffective assistance, (3) appellate counsel rendered ineffective assistance, (4) the trial court improperly excluded relevant evidence, (5) the appellate court erred when it failed to address a constitutional issue properly raised on direct appeal, and (6) the cumulative effect of the identified errors denied petitioner a fair trial. (*See id.*, Ex. 8.)

REPORT AND RECOMMENDATION - 5

1    On June 28, 2011, the acting chief judge of the Court of Appeals issued an order

2 dismissing petitioner's personal restraint petition, concluding that petitioner had failed to raise

3 any non-frivolous issues that merited reversal of his conviction.  (*See* Dkt. No. 18, Ex. 10 at 12.)

4    Petitioner thereafter filed a motion for discretionary review in the Washington Supreme

5 Court seeking review of Court of Appeals' decision.  (*See id.*, Ex. 11.)  Petitioner presented the

6 following four issues to the Supreme Court for review:

7        1.  Did the Court of Appeals error [sic] in dismissing the petition when it
             used the wrong non-constitutional standard of prejudice/error to hold
8             that a police witness' improper comment violating Tobey's
              constitutional right to silence could have been cured by an objection?
9
10       2.  Did the Court of Appeals deny Tobey his right to appellate review and
             procedural due process as guaranteed by art. I, § 22 and art. I, § 3 of the
11            Wash. Const. as well as the Fourteenth Amendment to the U.S. Const.
              when it failed to decide on the merits the constitutional violation of
12            Tobey's right to silence briefed as issue 12 on appeal?

13       3.  Did the Court of Appeals deny Tobey due process of law and a full and
             fair hearing on appeal and in the restraint petition by failing to address
14            all of the prosecutor's remarks repeatedly telling the jury they were
              there to decide if the victim was telling them the truth?
15
         4.  Whether the Court of Appeals erred in dismissing the ineffective
16            assistance of counsel claims when it [was] based upon the wrong
              prejudice standard?

17  (*Id.*, Ex. 11 at 2.)

18    On November 28, 2011, the Supreme Court commissioner issued a ruling denying

19 review, concluding that petitioner had failed to show that the acting chief judge's decision

20 conflicted with decisions of the Washington Supreme Court or with another Court of Appeals

21 decision, or that he was raising a significant constitutional question or an issue of substantial

22 public interest.  (*See id.*, Ex. 12 at 3.)  Petitioner moved to modify the commissioner's ruling but

23

REPORT AND RECOMMENDATION - 6

1   that motion was denied as well.  (Dkt. No. 18, Exs. 13, 14, 15 and 16.)  Petitioner now seeks

2   federal habeas review of his convictions.

3                                   GROUNDS FOR RELIEF

4       Petitioner identifies nineteen grounds for relief in his federal habeas petition:

5       GROUND ONE:  The prosecutor violated Due Process and committed serious
        constitutional misconduct when he undercut the proof-beyond-a-reasonable-doubt
6       standard by comparing it to decisions the jury makes on a daily basis thereby
        understating the degree of doubt necessary for a conviction and relieving the state
7       of its constitutional burden of proving every element by that standard.

8       GROUND TWO:  The prosecutor violated Mr. Tobey's due process right to a fair
        trial when he elicited a police witness's direct comment in the state's case-in-
9       chief, on Mr. Tobey invoking his Fifth Amendment right to silence on the advice
        of counsel, and used it as substantive evidence of guilt in violation of a motion in
10      limine, which had a substantial and injurious effect on the jury's verdict.

11      GROUND THREE:  The prosecutor misstated the jury's proper role and made it
        appear that an acquittal required the conclusion that the State's witness was lying,
12      and presented the jury with a false choice when he improperly argued the jury
        must decide if the complaining witness "made it all up or is telling the truth."
13      This violated my Fourteenth Amendment Due Process Rights, my Sixth
        Amendment right to compulsory process and reduced his burden to proof less
14      than beyond a reasonable doubt.

15      GROUND FOUR:  The prosecutor vouched for the credibility of the complaining
        witness repeatedly in closing argument; putting the prestige of his office behind
16      the witness by giving his personal opinion as to her veracity.

17      GROUND FIVE:  The prosecutor repeatedly appealed to the jury's passions and
        prejudices as parents to provoke them to render a verdict on an improper
18      emotional basis contravening my Federal Due Process rights to a fair trial.

19      GROUND SIX:  The prosecutor violated the Fourteenth Amendment Due Process
        Clause and the Sixth Amendment right to confront witnesses when he argued
20      multiple facts not in evidence and falsely attributed some of those facts to
        testimony the jury did not hear and to witnesses who did not testify.  This had a
21      substantial and injurious affect on the jury's verdict in this case.

22      GROUND SEVEN:  The prosecutor improperly argued Tobey must be guilty
        because of his role as a father-figure and because he shared the characteristics of
23      known offenders.

REPORT AND RECOMMENDATION - 7

GROUND EIGHT:  A police witness violated Mr. Tobey's core Fifth Amendment right to remain silent in violation of a motion in limine when she commented at trial that he invoked his right to remain silent upon his attorney's advice, which had a substantial and injurious effect on the jury's credibility determination and verdict in his case.

GROUND NINE:  The judge improperly commented on the evidence and the credibility of the complaining witness by performing a perfunctory competency exam on her in front of the jury despite the parties' prior stipulation to her competency.

GROUND TEN:  The evidence was insufficient to support the second count and violated Tobey's Due Process right for the State to prove every element of the crime beyond a reasonable doubt and Fifth Amendment right to be free from Double Jeopardy.

GROUND ELEVEN:  Elicited by the prosecutor, multiple State witnesses vouched for the credibility of the complaining witness thereby usurping the jury's role and infecting the trial with fundamental unfairness; violating Mr. Tobey's constitutional Due Process right to a fair trial and had a substantial an[d] injurious affect on the jury's verdict.

GROUND TWELVE:  Trial counsel was not functioning as "guaranteed" by the Sixth Amendment and provided ineffective assistance of counsel under Strickland when he failed to object to the multitude of trial errors or to anything in closing argument replete with prosecutorial misconduct which resulted in errors so serious that Mr. Tobey did not receive a fair trial because they had a substantial and injurious affect on the jury's verdict.

GROUND THIRTEEN:  Trial counsel's deficient performance prejudiced Mr. Tobey and violated his Fifth, Sixth, and Fourteenth Amendment right to testify and compulsory process when counsel made misrepresentations to Mr. Tobey that his exculpatory evidence would be admitted without him taking the stand and then failed to inform Mr. Tobey of his evidentiary errors; these actions caused Mr. Tobey not to make a knowing and intelligent decision of whether to testify or not.

GROUND FOURTEEN:  Counsel's performance was deficient under the 6th Amendment and Strickland when he failed to reasonably select a defense or call critical fact witnesses and admit Mr. Tobey's exculpatory evidence; both of which would have refuted the State's evidence and corroborated Mr. Tobey's testimony admitted at trial.

GROUND FIFTEEN:  Appellate counsel violated her duty to provide diligent and competent representation and effective assistance of counsel under the Rules of Professional Conduct; the Sixth Amendment, and Strickland when she failed to

REPORT AND RECOMMENDATION - 8

adequately investigate the trial transcripts, failed to adequately raise and argue prosecutorial misconduct, and failed to argue trial counsel was ineffective for his repeated failures to object to multiple instances of misconduct by the State.

GROUND SIXTEEN:  The trial court erred and violated Mr. Tobey's Sixth Amendment right to compulsory process applicable through the Fourteenth Amendment, when it denied the admission of Mr. Tobey's exculpatory evidence of store receipts and phone records under ER 106 Rule of Completeness which had a substantial and injurious affect on the jury's verdict.

GROUND SEVENTEEN:  The cumulative errors of the prosecutor, standing alone, and when combined with trial counsel's repeated egregious failures to object, so infected the trial with fundamental unfairness, they had a substantial and injurious effect on the jury's credibility determinations which affected the jury's verdict and made the resulting conviction a denial of due process.

GROUND EIGHTEEN:  The court of appeals denied Mr. Tobey Due Process and Equal Protection of the Law under the Fourteenth Amendment on direct appeal when it failed to address or answer the question posed as issue 12 in counsel's brief of whether the lead detective violated Mr. Tobey's Fifth Amendment right to be silent, and failed to address together all of the prosecutor's statements misstating the jury's role and his burden of proof which had a substantial and injurious effect on the jury's verdict.

GROUND NINETEEN:  The Washington Appellate Courts' rulings and opinions were unreasonable determinations of the facts in light of the evidence presented and were contrary to, and unreasonable applications of clearly established Federal Law as established by the Supreme Court.

(*See* Dkt. No. 6 at 8, 10, 12, 14, 16, 18, 20, 21, 22, 24, 26, 29, 30, 33, 45, 53, 57, 58, and 62.)

## DISCUSSION

Respondent asserts in his answer to the petition that petitioner properly exhausted some, but not all, of his grounds for federal habeas relief.  Specifically, respondent concedes that petitioner properly exhausted his state court remedies with respect to his second, third, fourth, and fifth grounds for relief, as well as portions of his twelfth ground for relief.  Respondent argues, however, that petitioner failed to properly exhaust his first, sixth, seventh, eighth, ninth, tenth, eleventh, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth, and

REPORT AND RECOMMENDATION - 9

nineteenth grounds for relief.  Respondent further argues, with respect to the claims he asserts were not properly exhausted, that those claims are now procedurally defaulted and are not cognizable in this federal habeas proceeding.  Finally, with respect to the properly exhausted claims, respondent argues that petitioner is not entitled to the relief.

Exhaustion and Procedural Default

A state prisoner is required to exhaust all available state court remedies before seeking a federal writ of habeas corpus.  28 U.S.C. § 2254(b)(1).  The exhaustion requirement is a matter of comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks and citations omitted).  In order to provide the state courts with the requisite "opportunity" to consider his federal claims, a prisoner must "fairly present" his claims to each appropriate state court for review, including a state supreme court with powers of discretionary review.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

It is not enough that all the facts necessary to support a prisoner's federal claim were before the state courts or that a somewhat similar state law claim was made.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  The habeas petitioner must have fairly presented to the state courts the substance of his federal habeas corpus claims.  *Id*.  Presenting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation of the claim for exhaustion purposes. *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

REPORT AND RECOMMENDATION - 10

Ground One

Respondent argues that petitioner failed to properly exhaust his first ground for relief in which petitioner asserts that the prosecutor committed misconduct during closing argument when he understated the degree of doubt necessary for a conviction and thereby relieved the state of its constitutional burden of proving every element of each of the offenses.  The record reveals that petitioner did not present this claim to the state courts on direct appeal.  Petitioner did present the claim to the Washington Court of Appeals in his personal restraint petition, but he did not present the claim to the Washington Supreme Court in his motion for discretionary review.

Petitioner contends that he exhausted his first ground for relief by presenting it in his motion to modify the ruling of the Supreme Court commissioner.  Petitioner argued in his motion to modify that the state appellate courts violated his right to effective appellate review by isolating errors so as not to view them in the proper context and by ignoring or exaggerating substantive facts.  (*See* Dkt. No. 18, Ex. 13 at 2-6.)  Within that claim, petitioner presented a laundry list of instances of alleged prosecutorial misconduct, including the prosecutor's trivialization of the burden of proof during closing argument which, petitioner asserted, had relieved the state of its constitutional burden of proving its case beyond a reasonable doubt.  (*See id.*)  This is the substance of petitioner's first ground for federal habeas relief.  The question, however, is whether asserting the claim in a motion to modify constitutes fair presentation of the claim for exhaustion purposes.

Motions for discretionary review are determined initially by the Supreme Court commissioner.  *See* Rule 17.2(a) of the Washington Rules of Appellate Procedure.  A litigant may object to the ruling of a commissioner by filing a motion to modify the ruling directed to the judges of the court served by the commissioner.  *See* Rule 17.7 of the Washington Rules of

REPORT AND RECOMMENDATION - 11

Appellate Procedure.  Where, as here, a litigant fails to present a claim in a motion for discretionary review, he deprives the commissioner of an opportunity to rule on the claim in the first instance and, by extension, he deprives himself of the opportunity to object as there is no ruling upon which to base any objection.  It appears clear that presentation of a claim to the Washington Supreme Court for the first time in a motion to modify does not constitute fair presentation of the claim for exhaustion purposes because the court has no opportunity to consider the merits of the claim in that procedural context.  Accordingly, this Court concludes that petitioner failed to properly exhaust his first ground for federal habeas relief.  *See Castille*, 489 U.S. at 351.

Ground Six

Respondent argues that petitioner failed to properly exhaust his sixth ground for relief in which petitioner asserts that the prosecutor committed misconduct when he argued facts not in evidence and falsely attributed some of those facts to testimony the jury did not hear and to witnesses who did not testify.  While petitioner presented this claim to the Washington Court of Appeals on both direct and collateral review, he never properly presented the claim to the Washington Supreme Court.  Again, petitioner made reference to this claim in his motion to modify the commissioner's ruling in his personal restraint proceedings but, for the reasons discussed above, that reference did not constitute fair presentation of the claim for exhaustion purposes.  Accordingly, petitioner's sixth ground for relief has not been properly exhausted.

Ground Seven

Respondent argues that petitioner failed to properly exhaust his seventh ground for relief in which petitioner asserts that the prosecutor committed misconduct when he argued that petitioner must be guilty because of his role as a father figure and because he shared the

REPORT AND RECOMMENDATION - 12

characteristics of known offenders.  Petitioner concedes in his reply brief that he never presented this claim to the Washington Supreme Court.  (Dkt. No. 29 at 9.)  He argues, however, that the prosecutor's alleged misconduct can still be reviewed under his claim that his trial counsel was ineffective for failing to object to any of the prosecutor's alleged improper argument, a claim which respondent concedes has been properly exhausted.

The Court will address below the exhaustion question as it relates to petitioner's various ineffective assistance of trial counsel claims asserted in his twelfth ground for relief.  However, regardless of the outcome of the exhaustion question with respect to petitioner's twelfth ground for relief, the fact remains that the specific claim alleged by petitioner in his seventh ground for relief was not presented to the Washington Supreme Court and, thus, the claim has not been properly exhausted.

Ground Eight

Respondent argues that petitioner failed to properly exhaust his eighth ground for relief in which petitioner asserts that a police witness violated his Fifth Amendment rights when she commented that petitioner had invoked his right to remain silent.  Respondent asserts that petitioner failed to present the claim at every level of review either on direct appeal or in his personal restraint proceedings.  However, this Court's review of the record reveals that petitioner arguably presented the claim at every level of review both on direct appeal (*see* Dkt. No. 18, Ex. 2 at 46-47 and Ex. 6 at 16-17) and in his personal restraint proceedings (*see id*., Ex. 8 at 13-20 and Ex. 11 at 5-8).  Accordingly, this Court deems petitioner's eighth ground for relief to be properly exhausted.

REPORT AND RECOMMENDATION - 13

1      Ground Nine

2           Respondent argues that petitioner failed to properly exhaust his ninth ground for relief in

3      which petitioner asserts that the trial court improperly commented on the evidence and on the

4      credibility of the complaining witness when it performed a perfunctory competency examination

5      of the witness in front of the jury despite the parties' prior stipulation to competency.  Petitioner

6      concedes that this claim has not been properly exhausted but argues that it should still be

7      considered "in the totality of the circumstances surrounding ineffective assistance of counsel."

8      (Dkt. No. 29 at 12.)  The Court will address below whether petitioner has properly exhausted any

9      ineffective assistance of counsel claim which arises out of the alleged trial court error asserted in

10     petitioner's ninth ground for relief.  However, it is clear from the record that the specific claim

11     alleged by petitioner in his ninth ground for relief has not been properly exhausted.

12          Ground Ten

13          Respondent argues that petitioner failed to properly exhaust his tenth ground for relief in

14     which petitioner asserts that the evidence was insufficient to support the second count of

15     conviction violating his right to have the state prove every element of the offense beyond a

16     reasonable doubt and his right to be free from double jeopardy.  Respondent concedes that

17     petitioner presented his sufficiency of the evidence claim to the Court of Appeals on direct

18     appeal, but argues that petitioner did not present the same factual claim to the Washington

19     Supreme Court in his petition for review.  Petitioner argues that the state has engaged in

20     "unwarranted hairsplitting" and that the claim has been properly exhausted.  (Dkt. No. 29 at 12-

21     13.)

22          A review of the record reveals that the precise claim presented to the Washington

23     Supreme Court on direct appeal was that the state's reliance on undifferentiated evidence

REPORT AND RECOMMENDATION - 14

1   violated petitioner's constitutional rights to jury unanimity, to present a full defense, and to be

2   free from double jeopardy.  That is simply not the same claim as is presented in petitioner's

3   federal habeas petition.  Accordingly, this Court concludes that the specific claim alleged by

4   petitioner in his tenth ground for relief has not been properly exhausted.

5       Ground Eleven

6       Respondent argues that petitioner failed to properly exhaust his eleventh ground for relief

7   in which petitioner asserts that the prosecutor committed misconduct when he elicited testimony

8   from multiple state witnesses which vouched for the credibility of the complaining witness.

9   Petitioner appears to concede that this claim has not been properly exhausted but argues again

10  that it should still be considered "in the totality of the circumstances surrounding ineffective

11  assistance of counsel."  (Dkt. No. 29 at 12.)  The Court will address below whether petitioner has

12  properly exhausted any ineffective assistance of counsel claim which arises out of the alleged

13  prosecutorial misconduct asserted in petitioner's eleventh ground for relief.  However, the record

14  makes clear that the specific claim alleged by petitioner in his eleventh ground for relief has not

15  been properly exhausted.

16      Ground Twelve

17      Petitioner asserts in his twelfth ground for relief that his trial counsel rendered ineffective

18  assistance when he failed to object to the errors alleged in each of petitioner's first eleven

19  grounds for federal habeas relief.  Respondent appears to concede in the portion of his answer

20  addressing the exhaustion question that petitioner's ineffective assistance of trial counsel claim

21  has been properly exhausted.  However, in the portion of his answer addressing the merits of

22  petitioner's twelfth ground for relief, respondent asserts that "several," but not all, of the

23  ineffective assistance of counsel claims identified in that ground for relief have been exhausted.

REPORT AND RECOMMENDATION - 15

The record reveals that petitioner raised the issue of ineffective assistance of trial counsel in his personal restraint petition and asserted therein several factual bases for the claim. This Court need not determine whether petitioner presented to the Washington Court of Appeals ineffective assistance of counsel claims based on the facts alleged in each of his first eleven federal habeas claims because it is clear that petitioner presented only three factual bases for his ineffective assistance of trial counsel claim to the Washington Supreme Court in his motion for discretionary review; *i.e.*, that trial counsel rendered ineffective assistance when he (1) failed to object to the detective's violation of his right to silence, (2) failed to object to the prosecutor's alleged misconduct in eliciting the objectionable testimony from the detective, and (3) failed to object to the prosecutor misstating the burden of proof and the jury's role. These three sub-parts correspond with the errors alleged by petitioner in his second, third and eighth grounds for federal habeas relief and are deemed properly exhausted. Petitioner has not properly exhausted his twelfth ground for relief to the extent it arises out of the errors alleged in his first, fourth, fifth, sixth, seventh, ninth, tenth and eleventh grounds for federal habeas relief.

Ground Thirteen

Respondent argues that petitioner failed to properly exhaust his thirteenth ground for relief in which petitioner asserts that his trial counsel rendered ineffective assistance when he misrepresented to petitioner that his exculpatory evidence would be admitted without him taking the stand and then failed to inform petitioner of his evidentiary errors. Respondent concedes that petitioner presented the claim to the Washington Court of Appeals in his personal restraint petition but asserts that petitioner failed to present the claim in his motion for discretionary review. Petitioner argues that the claim has been properly exhausted because he argued to the

REPORT AND RECOMMENDATION - 16

1    Supreme Court in his motion for discretionary review that the Court of Appeals erred in

2    dismissing his ineffective assistance of counsel claims.  (Dkt. No. 29 at 13-14.)

3          However, as noted above, petitioner specifically referenced only three ineffective

4    assistance of counsel claims in his motion for discretionary review; *i.e.*, that trial counsel

5    rendered ineffective assistance when he (1) failed to object to the detective commenting on his

6    right to silence, (2) failed to object to the prosecutor's alleged misconduct in eliciting the

7    objectionable testimony from the detective, and (3) failed to object to the prosecutor misstating

8    the burden of proof and the jury's role.  Petitioner did not put the Supreme Court on notice that

9    he intended to challenge the Court of Appeals' ruling with respect to all of the ineffective

10   assistance of counsel claims presented in his personal restraint petition.  Accordingly, this Court

11   concludes that petitioner has not properly exhausted his thirteenth ground for relief.

12          Ground Fourteen

13          Respondent argues that petitioner failed to properly exhaust his fourteenth ground for

14   relief in which petitioner alleges that trial counsel rendered ineffective assistance when he failed

15   to reasonably select a defense, failed to call critical fact witnesses, and failed to admit

16   petitioner's exculpatory evidence.  Respondent concedes that petitioner presented the claim to

17   the Washington Court of Appeals in his personal restraint petitioner but asserts that petitioner

18   failed to present the claim in his motion for discretionary review.  Petitioner argues, as he did

19   with respect to his thirteenth ground for relief, that the claim has been properly exhausted

20   because he argued in his motion for discretionary review that the Court of Appeals erred in

21   dismissing his ineffective assistance of counsel claims.  (Dkt. No. 29 at 13-14.)  Petitioner's

22   argument that his fourteenth ground for relief has been properly exhausted is without merit for

23

REPORT AND RECOMMENDATION - 17

1    the reasons explained above.  Accordingly, this Court concludes that petitioner has not properly

2    exhausted his fourteenth ground for relief.

3          Ground Fifteen

4          Respondent argues that petitioner failed to properly exhaust his fifteenth ground for relief

5    in which petitioner asserts that his appellate counsel rendered ineffective assistance when she

6    failed to adequately investigate the trial transcripts, failed to adequately raise and argue

7    prosecutorial misconduct, and failed to argue that trial counsel was ineffective for his repeated

8    failure to object to instances of prosecutorial misconduct.  Respondent concedes that petitioner

9    presented the claim to the Washington Court of Appeals in his personal restraint petition, but

10   argues that petitioner did not present the claim as a separate claim in his motion for discretionary

11   review.  Respondent maintains that the issue asserted and addressed in the Washington Supreme

12   Court was that the court of appeals used the wrong standard in addressing petitioner's ineffective

13   assistance of counsel claim and not the distinct claim of ineffective assistance of appellate

14   counsel.

15         This Court disagrees with respondent's assessment that the claim presented to the

16   Washington Supreme Court is substantively different than the claim presented here.  Petitioner

17   did argue in the Supreme Court that the Court of Appeals applied the wrong standard to his

18   ineffective assistance of counsel claims, but he did so in the context of identifying why he

19   believed the Court of Appeals' conclusion with respect to his ineffective assistance of counsel

20   claims was erroneous.

21         In this Court's view, petitioner has properly exhausted his ineffective assistance of

22   appellate counsel claim albeit only with respect to the three specific errors alleged in his motion

23   for discretionary review, those are the same three errors which respondent concedes, and the

REPORT AND RECOMMENDATION - 18

Court agrees, were exhausted in petitioner's twelfth ground for relief.  Thus, petitioner has properly exhausted his claims that appellate counsel rendered ineffective assistance when she failed to raise on direct appeal trial counsel's (1) failure to object to the detective's violation of his right to silence, (2) failure to object to the prosecutor's alleged misconduct in eliciting the objectionable testimony from the detective, and (3) failure to object to the prosecutor misstating the burden of proof and the jury's role.  As to all other sub-parts, this Court concludes that petitioner's ineffective assistance of appellate counsel claim has not been properly exhausted.

Ground Sixteen

Respondent argues that petitioner failed to properly exhaust his sixteenth ground for relief in which petitioner asserts that the trial court erred when it denied admission of petitioner's exculpatory evidence in the form of store receipts and phone records.  Petitioner concedes that this claim has not been properly exhausted but argues it should still be considered "in the totality of the circumstances surrounding ineffective assistance of counsel."  (Dkt. No. 29 at 12.)  The Court has addressed above the extent to which petitioner's ineffective assistance of counsel claim has been properly exhausted.  The record makes clear that the specific claim alleged by petitioner in his sixteenth ground for relief has not been properly exhausted.

Ground Seventeen

Respondent argues that petitioner failed to properly exhaust his seventeenth ground for relief in which petitioner asserts that the cumulative effect of all of the alleged errors denied him a fair trial.  In his statement of supporting facts, petitioner specifically identifies seven underlying errors to support his cumulative error claim.  Respondent first contends that many of the underlying errors identified by petitioner have not been properly exhausted, and are procedurally defaulted, and therefore cannot serve as underlying errors for the cumulative error

1    claim.  Respondent also contends that petitioner did not present his cumulative error claim as a

2    federal constitutional claim at each level of review in the state courts and that the claim,

3    therefore, has not been properly exhausted.  Petitioner asserts that the claim has been properly

4    exhausted because he specifically cited to the Fourteenth Amendment of the United States

5    Constitution in presenting his claim to the state courts.  (Dkt. No. 29 at 16-17.)

6           A review of the briefs presented to the state courts on direct appeal reveals that petitioner,

7    in both his opening brief to the Court of Appeals and in his petition for review to the Supreme

8    Court, identified his cumulative error claim as one implicating his due process right to a fair trial

9    under the Fourteenth Amendment.  (*See* Dkt. No. 18, Ex. 2 at 47-48 and Ex. 6 at 19.)  Thus,

10   petitioner's cumulative error claim was fairly presented to the state courts as a federal

11   constitutional claim.  However, respondent correctly notes that the cumulative error claim can

12   only be considered in light of the underlying errors which have been properly exhausted.

13          <u>Ground Eighteen</u>

14          Respondent argues that petitioner failed to properly exhaust his eighteenth ground for

15   relief in which petitioner asserts that the Court of Appeals violated his rights to due process and

16   equal protection when it failed to address on direct appeal his claims that the lead detective

17   violated his right to remain silent and that the prosecutor's numerous comments misstating the

18   jury's role and the burden of proof, taken together, had a substantial and injurious effect on the

19   jury's verdict.  Petitioner contends that the claim has been properly exhausted.  (*See* Dkt. No. 29

20   at 17.)

21          A review of petitioner's personal restraint petition reveals that petitioner presented this

22   claim to the Court of Appeals as one arising under state law and not federal constitutional law.

23   (Dkt. No. 18, Ex. 8 at 91-92.)  While petitioner alleged a federal constitutional basis as well as a

REPORT AND RECOMMENDATION - 20

state law basis for the claim in his motion for discretionary review, petitioner's failure to present his federal constitutional claim at each level of state court review renders the claim not properly exhausted for purposes of federal habeas review.

Ground Nineteen

Respondent argues that petitioner failed to properly exhaust his nineteenth ground for relief in which petitioner asserts that the Washington appellate courts' rulings were based on unreasonable determinations of the facts in light of the evidence presented and were contrary to, or involved unreasonable applications of, federal law as established by the United States Supreme Court.  Petitioner asserts that the claim is exhausted because he presented the claim to the Washington Supreme Court in his motion to modify the commissioner's ruling in his personal restraint proceedings.  Petitioner contends that the claim was not cognizable until after the commissioner issued his ruling and that petitioner presented the claim to the state courts, once it became ripe for review, in the manner provided by state law; *i.e.*, by filing a motion to modify the commissioner's ruling under Washington Rule of Appellate Procedure 17.7.

In this Court's view, the question of exhaustion is irrelevant with respect to petitioner's nineteenth ground for relief because petitioner presents no substantive claim therein.  Petitioner merely identifies in his nineteenth ground for relief the standard to be applied to his federal habeas claims under § 2254 and he sets forth his arguments as to why he believes he is entitled to relief under the applicable standard on the claims asserted in his petition.  Accordingly, the Court will not treat ground nineteen as an independent ground for relief but will consider the arguments presented therein to the extent they pertain to the substantive claims which have been properly exhausted.

REPORT AND RECOMMENDATION - 21

In summary, this Court concludes that petitioner has properly exhausted his second, third, fourth, fifth and eighth grounds for relief, as well as portions of his twelfth, fifteenth, and seventeenth grounds for relief.  Petitioner failed to properly exhaust his first, sixth, seventh, ninth, tenth, eleventh, thirteen, sixteenth, and eighteenth grounds in their entirety.  In addition, petitioner has failed to properly exhaust portions of his twelfth, fifteenth and seventeenth grounds for relief as indicated above.  Finally, the exhaustion question concerning petitioner's nineteenth ground for relief need not be resolved because that claim does not present any substantive basis for federal habeas relief.

Respondent argues that petitioner, having failed to properly exhaust certain claims, would now be barred from presenting his unexhausted claims to the state courts under RCW 10.73.090 (time bar), and RCW 10.73.140 (successive petition bar) and, thus, that the claims are procedurally defaulted.  RCW 10.73.090(1) provides that a petition for collateral attack on a judgment and sentence in a criminal case must be filed within one year after the judgment becomes final.  Petitioner's conviction became final for purposes of state law on June 24, 2009, the date the Court of Appeals issued its mandate terminating direct review.  It therefore appears clear that petitioner would now be time barred from returning to the state courts to present his unexhausted claims.  *See* RCW 10.73.090.  In addition, because petitioner has previously presented a personal restraint petition to the state courts, the state courts are unlikely to entertain another such petition from petitioner.  *See* RCW 10.73.140.

Accordingly, this Court concludes that petitioner has procedurally defaulted on the claims identified above as having not been properly exhausted in the state courts.  When a state prisoner defaults on his federal claims in state court, pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate

REPORT AND RECOMMENDATION - 22

cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

<u>Cause and Prejudice</u>

To satisfy the "cause" prong of the cause and prejudice standard, petitioner must show that some objective factor external to the defense prevented him from complying with the state's procedural rule. *Id*. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show "prejudice," the petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Only in an "extraordinary case" may the habeas court grant the writ without a showing of cause or prejudice to correct a "fundamental miscarriage of justice" where a constitutional violation has resulted in the conviction of a defendant who is actually innocent. *Murray*, 477 U.S. at 495-96.

Petitioner fails to demonstrate that any factor external to the defense prevented him from complying with the state's procedural rules and, thus, he has not demonstrated cause for his procedural default. Because petitioner has not met his burden of demonstrating cause for his procedural default, this Court need not determine whether there was any actual prejudice. *Cavanaugh v. Kincheloe*, 877 F.2d 1443, 1448 (9th Cir. 1989) (citing *Smith v. Murray*, 477 U.S. 527, 533 (1986)). In addition, petitioner makes no colorable showing of actual innocence.

Petitioner therefore fails to demonstrate that his procedurally defaulted claims are eligible for federal habeas review. Accordingly, this Court recommends that petitioner's federal habeas petition be denied with respect to those claims.

REPORT AND RECOMMENDATION - 23

<u>Standard of Review for Exhausted Claims</u>

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  *See id*. at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).  The Supreme Court has further explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law, for purposes of AEDPA, means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer*, 538 at 71-72.  "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's

REPORT AND RECOMMENDATION - 24

decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).  If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Prosecutorial Misconduct

Petitioner asserts claims of prosecutorial misconduct in his second, third, fourth, and fifth grounds for relief.  When a prosecutor's conduct is placed in question, unless the conduct impermissibly infringes on a specific constitutional right, the standard of review is the "narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181-82 (1986); *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-43 (1974).  To obtain relief on a claim of prosecutorial misconduct, a federal habeas petitioner must do more than show that "the prosecutor's remarks were undesirable or even universally condemned." *Darden*, 477 U.S. at 180-81.  A petitioner must demonstrate that the allegedly improper comments made by the prosecutor "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. at 181 (quoting *Donnelly*, 416 U.S. at 643).

In order to assess a claim that a prosecutor's comments rendered a trial so fundamentally unfair as to deny a petitioner due process, it is necessary to examine the entire proceedings and place the prosecutor's statements in context. *See Greer v. Miller*, 483 U.S. 756, 765-66 (1987).  A reviewing court must keep in mind that during closing argument a prosecutor has wide latitude to make reasonable inferences based on the evidence. *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991).

REPORT AND RECOMMENDATION - 25

Prosecutorial misconduct which rises to the level of a constitutional violation nonetheless provides a basis for federal habeas relief only if the misconduct is deemed prejudicial under the test announced by the Supreme Court in *Brecht*.  *See Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir. 2004).  Under *Brecht*, habeas relief may be granted only if an error "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

### 1.      *Comment on Right to Remain Silent*

Petitioner identifies two claims in his petition which pertain to the alleged improper comment on his right to remain silent.  Petitioner asserts in his second ground for relief that the prosecutor violated his due process right to a fair trial when he elicited from the lead detective a comment about petitioner invoking his right to remain silent and then used the comment as substantive evidence of guilt in violation of the trial court's order on a motion in limine.  (Dkt. No. 6 at 10-12.)  Petitioner asserts in his eighth ground for relief that the detective violated his right to remain silent when she commented at trial that petitioner had invoked his right to remain silent.  (*Id*. at 21-22.)  Though only one of the two claims alleges prosecutorial misconduct, the claims are interrelated and the Court will therefore consider them together.

During pretrial proceedings, the trial court and counsel discussed the extent to which a pre-arrest telephone conversation between petitioner and the lead detective would be admissible at trial.  (*See* Dkt. No. 29, Ex. 1 at 38-49.)  The trial court ruled that such evidence would be limited to the fact of the telephone call.  (*See id*., Ex. 1 at 47-49.)  The court made clear in its ruling that it would be inappropriate for the detective to testify regarding the substance of any telephone conversations with petitioner.  (*See id*., Ex. 1 at 38-49.)

REPORT AND RECOMMENDATION - 26

At trial, during direct examination of the detective, the prosecutor elicited testimony about the telephone conversation which was the subject of the earlier motion in limine. The detective testified that, during the conversation in question, she informed petitioner he was a suspect in a crime and she anticipated a warrant would be issued for his arrest in the near future. (Dkt. No. 18, Ex. 18 at 6.)  When asked by the prosecutor why she did not provide petitioner with any details about the suspected crime during the call, the detective responded that petitioner "didn't want to speak with me about the crime I was investigating, and so I didn't want to provide him information since I wasn't getting any information from him." (*Id*., Ex. 18 at 7.)

On direct appeal, petitioner argued in his *pro se* statement of additional grounds that the prosecutor and the detective committed misconduct by violating the trial court's ruling on the motion in limine pertaining to the telephone conversation, and that the detective improperly commented on petitioner's right to be silent. (*Id*., Ex. 3 at 17A-17C.)  As with most of the claims asserted by petitioner in his statement of additional grounds, the Court of Appeals did not discuss the claim but appears to have considered it and found it to be without merit. (*See id*., Ex. 5 at 15.)

Petitioner raised the issue again in his personal restraint petition where he argued that the prosecutor and the detective violated the motion in limine and improperly commented on his pre-arrest silence in violation of his state and federal constitutional rights. (*Id*., Ex. 8 at 13-18.)  The Court of Appeals rejected petitioner's prosecutorial misconduct claim as it pertained to the alleged violation of the trial court's ruling on the motion in limine, but did not specifically address petitioner's constitutional claim. (*Id*., Ex. 10 at 5-6.)

Petitioner argued to the Supreme Court in his motion for discretionary review that the Court of Appeals applied the wrong standard to his prosecutorial misconduct claim in his

REPORT AND RECOMMENDATION - 27

1   personal restraint proceedings and failed to address the claim at all on direct appeal. (Dkt. No.

2   18, Ex. 11 at 5-10.) The Supreme Court commissioner rejected petitioner's arguments. The

3   commissioner first noted in his ruling that because petitioner's counsel did not object to the

4   detective's answer at trial, the acting chief judge of the Court of Appeals, in reviewing the claim

5   in petitioner's personal restraint proceedings, considered whether the alleged misconduct was so

6   flagrant and ill-intentioned that any prejudice could not have been cured by an instruction to the

7   jury, and concluded that it was not. (*Id.*, Ex. 12 at 1.)

8       The commissioner then went on to discuss the arguments raised by petitioner in his

9   motion for discretionary review:

10          Mr. Tobey now argues that the acting chief judge misapplied this standard
11      of prejudice. But the standard he applied is the proper one for claims of
        prosecutorial misconduct to which no objection was made at trial. *State v.*
12      *Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). It is true that this court has
        said that testimony on prearrest silence, when presented as evidence of guilt, is
13      reversible error when the State fails to show that the error was harmless, but the
        court has applied that principle in cases where the defendant objected to the
14      testimony at trial or raised the issue by motion for a new trial. *See, e.g., State v.*
        *Burke*, 163 Wn.2d 204, 181 P.3d 1 (2008); *State v. Easter*, 130 Wn.2d 228, 922
15      P.2d 1285 (1996). And even if the claimed constitutional error is reviewed
        outside the context of prosecutorial misconduct (or Mr. Tobey's alternative claim
16      of ineffective assistance of counsel), Mr. Tobey must still demonstrate he was
        actually and substantially prejudiced. *In re Pers. Restraint of Elmore*, 162 Wn.2d
17      236, 251, 172 P.3d 335 (2007). He does not show that the detective's isolated
        answer, which the prosecutor did not thereafter remark upon, actually and
18      substantially prejudiced him. Indeed, since the prosecutor made no use of the
        detective's answer, there was likely no constitutional violation at all. *See Burke*,
19      163 Wn.2d at 217 (constitutional violation occurs when State invites jury to infer
        guilt from silence).

20          Mr. Tobey argues that the Court of Appeals failed to address this issue on
21      direct appeal even though he raised it in a pro se statement of additional grounds
        for review. As a result, Mr. Tobey urges, his claim should be evaluated under the
22      constitutional harmless error standard applicable on direct appeal (harmless
        beyond a reasonable doubt). But while the Court of Appeals did not discuss Mr.
        Tobey's pro se issues, it did consider them and found them meritless. And in any
23      event Mr. Tobey does not show he would fare better under the direct appeal

REPORT AND RECOMMENDATION - 28

standard.  As indicated, the detective's answer was isolated and was not used by the State to argue for Mr. Tobey's guilt.

(Dkt. No. 18, Ex. 12 at 1-2.)

Petitioner argues that the commissioner made multiple unreasonable determinations of fact and conclusions of law in his ruling.  However, the pertinent factual findings that the prosecutor did not follow up on the detective's answer and did not use it to argue petitioner's guilt are amply supported by the record.  The commissioner's conclusion that there was likely no constitutional violation at all in the circumstances presented here was reasonable in light of the factual record and petitioner identifies no clearly established federal law which requires a different result.

Even assuming a constitutional violation did occur, the commissioner reasonably concluded that there was no prejudice given that the detective's answer was, in fact, isolated and was not used by the state to argue, or even infer, guilt from petitioner's silence.  Nothing in the record before this Court suggests that the alleged improper exchange between the prosecutor and the lead detective with respect to the telephone conversation, when viewed in the context of the entire trial, had a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht*, 507 U.S. at 637.  Accordingly, petitioner's federal habeas petition should be denied with respect to his second and eighth grounds for relief.

### 2.    *Misstating Jury's Role*

Petitioner asserts in his third ground for relief that the prosecutor committed misconduct when, during closing argument, he misstated the jury's proper role by telling the jury repeatedly that they were there to decide if the complaining witness was telling the truth rather than to

REPORT AND RECOMMENDATION - 29

decide if the state had met its burden of proof.  (Dkt. No. 6 at 12.)  Petitioner identifies five

specific statements by the prosecutor which he believes were improper:

> Essentially, we are here to decide whether or not [MF] has been telling us the truth.

> Ask yourself:  Is this girl telling us the truth?  And if you are convinced of that, then you are convinced beyond a reasonable doubt.

> I told you that a simple question that you have to answer comes down to whether or not this little girl is telling us the truth.

> You decide if she made this all up or is telling the truth about exactly what Karl Tobey did to her in his bedroom.

> This girl who knows what she is saying is getting this man in trouble is either telling the truth or she is evil.

(*See* Dkt. No. 6 at 12-13 (citing Dkt. No. 18, Ex. 20 at 74, 78, 101, 103, 182-83).)

Petitioner raised this prosecutorial misconduct claim on direct appeal in both his opening brief and in his statement of additional grounds.  In the opening brief, petitioner's appellate counsel focused her argument on a single statement by the prosecutor; *i.e.* "[t]his girl who knows that what she is saying is getting this man in trouble is either telling the truth or she is evil."  (*See* Dkt. No. 18, Ex. 2 at 17.)  Petitioner, in his statement of additional grounds, identified an additional three comments by the prosecutor which he believed improperly conveyed to the jury that in order to acquit him, the jury had to decide that the complaining witness was lying to them.  (*See id.*, Ex. 3 at 13.)

The Court of Appeals focused its discussion on the claim presented by appellate counsel in the opening brief, and on the single statement identified therein, and concluded that the remark was improper "because it misrepresented the task before the jury by suggesting that in order to

REPORT AND RECOMMENDATION - 30

acquit Tobey, the jury had to find that MF was evil." (Dkt. No. 18, Ex. 5 at 13.)   The court went on to explain that the Washington courts

> have repeatedly held that it is misconduct for a prosecutor to argue that in order to acquit a defendant, the jury must find that the State's witnesses are either lying or mistaken.  The jury need not find that a witness was mistaken or lying in order to acquit; instead, it is required to acquit unless it has an abiding conviction in the truth of the testimony.

(*Id.*) While the Court of Appeals found the prosecutor's remark improper, it also noted that the defense did not object and that a timely objection and curative instruction would have cured any prejudice.  (*Id.*)  The court therefore determined that the issue had not been preserved for appeal. (*Id.*)

With respect to the portion of the claim presented in petitioner's statement of additional grounds, where petitioner identified several additional remarks made by the prosecutor which he believed were improper, this appears to be among the *pro se* claims which the Court of Appeals deemed to be "largely subsumed in the errors contained in his counsel's brief, and . . . not of manifest constitutional importance."  (*Id.*, Ex. 5 at 15.)

Petitioner raised the issue again in his personal restraint petition, but the acting chief judge declined to reconsider the issue because petitioner had not demonstrated that the interests of justice required re-litigation.  (*Id.*, Ex. 10 at 4-5.)  The acting chief judge also went on to state, however, that

> Even assuming arguendo that Tobey could establish actual prosecutorial misconduct, he has failed to meet his burden of showing prejudice that is required to warrant reversing his conviction.  In light of the testimony from the victim giving a firsthand account of being raped several times by Tobey, he has failed to establish a substantial likelihood that his conviction was the result of the alleged prosecutorial misconduct.  The fact that the jury acquitted him of one count of child rape is a strong indicator that the jury carefully weighed the evidence against him and that any prosecutorial misconduct did not deprive Tobey of a fair trial.

REPORT AND RECOMMENDATION - 31

1    (Dkt. No. 18, Ex. 10 at 5.)[1]

2           The Supreme Court commissioner acknowledged in his ruling on petitioner's motion for

3    discretionary review that the claim involved an allegation of multiple improper statements, but

4    concluded that petitioner had demonstrated no error in the acting chief judge's determination that

5    there was no reason, in the interests of justice, to reconsider the issue.  (*Id*., Ex. 12 at 3.)  The

6    commissioner also concluded that petitioner had demonstrated no actual and substantial

7    prejudice.  (*Id*.)

8           Petitioner fails to demonstrate that the decisions of the state courts were contrary to, or

9    constitute an unreasonable application of, clearly established federal law.  The test applied by the

10   state courts to petitioner's prosecutorial misconduct claim was consistent with the test set forth in

11   *Darden*; *i.e.*, were the prosecutor's remarks improper and, if so, were they prejudicial.  In

12   addition, the state courts, in evaluating the prejudicial effect of the prosecutor's comments,

13   properly assessed the comments in light of the entire proceeding.

14          The challenged remarks went to the issue of M.F.'s credibility which was a central issue

15   in the case and was an issue argued vigorously by both sides during closing argument.  While the

16   state courts found one of the challenged remarks misrepresented the task before the jury and was

17   therefore improper, the state courts clearly concluded that none of the remaining challenged

18   comments, either singularly or in the aggregate, misstated the jury's role or shifted the burden of

19   proof.  Petitioner identifies no clearly established federal law which undermines this conclusion.

20

21          _____
            [1]  Petitioner argues in his reply brief that this "alternate adjudication" applied to a different prosecutorial
22   misconduct claim.  While the Court of Appeals' ruling is not entirely clear on this point, careful scrutiny of the
     portion of the Court of Appeals' ruling addressing petitioner's various prosecutorial misconduct claims suggests that
     the "alternate adjudication" was indeed intended to apply to the claim at issue in petitioner's third ground for federal
23   habeas relief.  (*See* Dkt. No. 18, Ex. 10 at 4-6.)

     REPORT AND RECOMMENDATION - 32

1    As to the single improper remark, the record reflects that it was made during rebuttal

2    closing argument after petitioner's counsel spent considerable time during his argument

3    challenging M.F.'s credibility.  (Dkt. No. 18, Ex. 20 at 170-76.)  The jury was specifically

4    instructed that they were to rely only on the evidence presented during the trial and that the

5    attorney's statements were not evidence.  (*Id*., Ex. 22, Instruction 1.)  The jury was also properly

6    instructed regarding the burden of proof (*see id*., Ex. 22, Instruction 5) and, in fact, the

7    prosecutor emphasized during his closing argument that the burden was on the state to prove the

8    charged offenses beyond a reasonable doubt (*id*., Ex. 20 at 78).  Jurors are presumed to follow

9    their instructions, *Kansas v. Marsh*, 548 U.S. 163, 179-80 (2006), *Richardson v. Marsh*, 481 U.S.

10   200, 206 (1987), and nothing in the record before this Court suggests that they did not do so in

11   this instance.  The state courts reasonably concluded that the one improper comment did not

12   prejudice petitioner.  For the foregoing reasons, petitioner's federal habeas petition should be

13   denied with respect to his third ground for relief.

14   ### 3.   *Vouching for Credibility of Witness*

15   Petitioner asserts in his fourth ground for relief that the prosecutor committed misconduct

16   when he repeatedly vouched for the credibility of the complaining witness during closing

17   argument.  (Dkt. No. 6 at 14.)  Petitioner identifies various portions of the prosecutor's argument

18   which he believes were objectionable.  (*Id*. at 14-15.)  Petitioner first points to a section of the

19   argument where the prosecutor is discussing the various counts in relation to one of the jury

20   instructions:

21   > Essentially what it means is we've charged Mr. Tobey with three different
     > counts of rape of a child in the first degree.  And we know in this case that [M.F.],

22   > understandably, is not going to be able to come in here and say, "Well, he raped
     > me on this day.  I wrote it down.  And it happened on August 1st at 2 p.m."

23

REPORT AND RECOMMENDATION - 33

I mean, the best she can give us – and what she gave us was good – was that this always happened at his apartment, in his bedroom.

And remember her testimony, it happened a lot, it happened in this fashion.  And she testified that – and we went through:  Did it happen more than once?  Did it happen more than twice?  Did it happen more than three times?  And she stopped me right there and said, "It happened more than four times."

And so you might ask yourself:  Well how come you didn't charge him with four counts of rape of a child if that's the case?  Well, ladies and gentlemen, we have to be convinced beyond any reasonable doubt.  And the state wants you to be convinced beyond any reasonable doubt.

(Dkt. No. 6 at 14-15; Dkt. No. 18, Ex. 20 at 80-81.)

The prosecutor went on to argue "[a]nd you can only imagine the challenge that is facing [M.F.] as she is trying to desperately tell you the truth about what happened between her and Karl in that bedroom."  (Dkt. No. 6 at 15; Dkt. No. 18, Ex. 20 at 97.)  During rebuttal closing argument, the prosecutor argued that "[M.F.], at nine years old, simply at that time didn't understand these things.  She only understood one thing, and that's that you tell the truth, and telling a lie gets you in trouble.  And for six times now she has told the truth."  (*Id.*; Dkt. No. 18, Ex. 20 at 181.)

Petitioner presented his claim that the prosecutor improperly vouched for the credibility of the complaining witness in his statement of additional grounds on direct appeal.  That claim was among the numerous *pro se* claims which were summarily denied by the Court of Appeals.[2] (*See* Dkt. No. 18, Ex. 5 at 15.)  The Court of Appeals' summary denial was the last adjudication

---

[2]  Petitioner's appellate counsel presented a slightly different claim in petitioner's opening brief on appeal based on essentially the same facts; *i.e.*, that the prosecutor improperly suggested petitioner should be found guilty based on evidence not presented at trial because the state presented evidence of only four statements and not six and thereby improperly bolstered the credibility of the complaining witness.  The Court of Appeals, in addressing the claim that the prosecutor had deliberately overstated the number of times [M.F.] had told her story and thereby improperly bolstered her credibility, concluded that the prosecutor's statement, even if incorrect, "was not misconduct, certainly not misconduct of such magnitude that it could not have been cured by instruction [had defense counsel objected]."  (Dkt. No. 18, Ex. 5 at 13-14.)

REPORT AND RECOMMENDATION - 34

of the claim on the merits because the Washington Supreme Court denied petitioner's petition for review without comment.  Where, as here, a state court's decision does not explain the state court's reasoning, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Harrington*, 131 S. Ct. at 784.  Petitioner fails to meet this burden.

Improper vouching typically occurs when:  (1) the prosecutor places the prestige of the government behind a witness by expressing his personal belief in the veracity of the witness, or (2) the prosecutor indicates that information not presented to the jury supports a witness's testimony.  *United States v. Hermanek*, 289 F.3d 1076, 1098 (9th Cir. 2002) (citing *United States v. Edwards*, 154 F.3d 915, 921 (9th Cir. 1998)).  Improper vouching also occurs when a prosecutor implicitly vouches for a witness's credibility.  *Hermanek*, 289 F.3d at 1098 (citing *United States v. McKoy*, 771 F.2d 1207, 1211 (9th Cir. 1985)).

The first passage complained of by petitioner concerning the number of counts charged basically summarized the testimony presented by the complaining witness, acknowledged the lack of specificity in some of the testimony, and then emphasized to jurors their obligation to ensure that each count charged could be proven beyond a reasonable doubt.  Petitioner fails to demonstrate that this argument was in any way improper.

The next two passages cited by petitioner, where the prosecutor argued that M.F. was trying to tell the truth, were simply based on the evidence presented at trial.  At the beginning of M.F.'s direct examination, the prosecutor asked M.F. a series of questions about telling the truth versus telling lies.  M.F. acknowledged that she understood that lying could get her into trouble and she promised to tell the truth.  (*See* Dkt. No. 18, Ex. 17 at 7-8.)  Later, when the prosecutor asked her if anything had happened between her and petitioner on petitioner's bed, she

acknowledged that she didn't like to talk about it but that she'd had to talk about it a lot.  (Dkt. No. 18, Ex. 17 at 38-39.)  When asked to describe what she remembered having happened she told the prosecutor "I don't want to say" but then acknowledged she had promised to tell the truth.  (*Id*., Ex. 17 at 39.)  M.F. then proceeded to describe what had happened.  Petitioner fails to demonstrate that the prosecutor's argument regarding M.F. telling the truth was in any way improper.

Finally, petitioner complains about the prosecutor's comment that M.F. had told the truth "for six times now."  It was clear from M.F.'s testimony that she had talked to many people about the incident including her father's fiancée, a child specialist, a nurse practitioner, the prosecutor, and defense counsel.  In addition, defense counsel, in his cross-examination of M.F., made specific reference to the prior trial in which M.F. testified.  It thus appears that the prosecutor accurately represented in his argument the number of times M.F. had repeated essentially the same series of events.  Petitioner makes no showing that this argument was in any way improper.

Consistent with the standard announced in *Darden*, the state courts could reasonably have denied petitioner's claim that the prosecutor improperly vouched for the credibility of M.F. as the record reveals no misconduct nor, indeed, any resulting prejudice.  Accordingly, petitioner's federal habeas petition should be denied with respect to his fourth ground for relief.

### 4.    *Appeal to Passion and Prejudice*

Petitioner asserts in his fifth ground for relief that the prosecutor improperly appealed to the jury's passion and prejudice during closing argument when he made repeated references to

M.F.'s lost innocence as he described at length the impact the crime would have on M.F. in the future.[3]   The relevant portions of the argument at issue are as follows:

> Ladies and gentlemen of the jury, [M.F.] was born on August 2nd of 1994. She's 11 years old now, growing every second.  She's growing out of her clothes, growing out of her toys.  She's growing out of her innocence. . . .  And it's this innocence that shields her from the knowledge and from an understanding of knowing exactly what Karl Tobey did to her when she was seven, eight, and nine. . . .  Like most parents, I'm sure that Jason and Jennifer Fults, as well as her future step-mother, Leilani Smith, wish that they could make her stop growing up, stop growing up.  Maybe they wish that [M] could stay as innocent and as pure as the day that she was born.  The truth, obviously, is that that can't be stopped.  Nothing in this world is going to stop that moment from coming when [M.F.] looks in the mirror and comes to understand exactly what this man, Karl Tobey, did to her[.] . . .  And, nothing is obviously going to stop that moment from coming when she comes to realize that Karl Tobey was the first person that she was ever intimate with.

(*See* Dkt. No. 18, Ex. 20 at 70-72.)

The Washington Court of Appeals, on direct appeal, rejected petitioner's prosecutorial misconduct claim arising out of the above comments.  The Court of Appeals explained its conclusion as follows:

> Tobey contends that the prosecutor's comments were so flagrant and ill-intentioned as to warrant reversal.  In support of this argument he cites to <u>State v. McKenzie</u>, in which the prosecutor, responding to defense counsel's theme that the defendant would have to be satisfied with the  phrase "not guilty," rather than "innocent," began her rebuttal closing argument by saying she was going to focus on the word "innocence."  She then inferred that the 12-year-old victim was sexually inexperienced, that her belief that the sexual assault upon her was something that happened to everybody, and that defense counsel even theorized that her account of the defendant's unvarying sexual act was the fabrication of a sexually inexperienced child.

---

[3]  Petitioner cites to other comments made by the prosecutor which he believes improperly appealed to the passions and prejudices of the jury.  However, only petitioner's challenge to the comments regarding M.F.'s lost innocence were presented at each level of state court review and, thus, only that portion of petitioner's fifth ground for relief can be deemed properly exhausted for purposes of federal habeas review.

REPORT AND RECOMMENDATION - 37

On appeal, the court held that in drawing attention to the victim's lost innocence, the deputy prosecutor went too far in her effort to exploit defense counsel's theme that the defendant had to be content with the phrase "not guilty," instead of the word "innocent." Nevertheless, it concluded that, although the prosecutor's comments were improper, they were not so flagrant and ill-intentioned that their prejudicial effect could not have been cured by the trial court's instruction to the jury.

Tobey also cites to State v. Claflin, a case where the prosecutor read a poem during closing. The poem, written by an anonymous rape victim, had no direct bearing on the case, was not introduced at trial, and was objected to by defense counsel. It made vivid reference to the anonymous victim's thoughts about being raped, and described a razor blade being held to the victim's throat. The comparison is not illuminating. In the present case, the prosecutor did not introduce inflammatory material from outside the record, but confined himself to discussing the repercussions of Tobey's rape of MF. Tobey did not object to the prosecutor's statement at trial.

The prosecutor's statements here cannot be construed as being so flagrant and ill-intentioned that a curative instruction could not have neutralized them.

(Dkt. No. 18, Ex. 5 at 11-12 (footnotes omitted).)

The state court's adjudication of this claim was not contrary to, nor did it constitute an unreasonable application of, clearly established federal law. The test applied by the state courts was consistent with that set forth in *Darden*, and the Court of Appeals reasonably concluded that petitioner suffered no prejudice as a result of the prosecutor's comments. Petitioner has not identified any United States Supreme Court holding which requires a result different from that reached by the state courts on the issue presented. Accordingly, petitioner's federal habeas petition should be denied with respect to his fifth ground for relief.

<u>Ineffective Assistance of Trial Counsel</u>

Petitioner asserts in his twelfth ground for relief that his trial counsel rendered ineffective assistance when he failed to object to various trial errors or to the prosecutor's improper comments during closing argument. While petitioner cites to a number of alleged deficiencies in

REPORT AND RECOMMENDATION - 38

his statement of supporting facts, petitioner properly exhausted only three sub-parts of his

ineffective assistance of counsel claim; *i.e.*, that trial counsel was ineffective because he (1)

failed to object to the detective commenting on his right to silence, (2) failed to object to the

prosecutor's alleged misconduct in eliciting the objectionable testimony from the detective, and

(3) failed to object to the prosecutor misstating the burden of proof and the jury's role during

closing argument.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of

counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Claims of ineffective assistance

of counsel are evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a

defendant must prove (1) that counsel's performance was deficient and, (2) that the deficient

performance prejudiced the defense. *Id*.

With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's

performance fell below an objective standard of reasonableness. *Id*. at 688. Judicial scrutiny of

counsel's performance must be highly deferential. *Id*. at 689. There is a strong presumption that

counsel's performance fell within the wide range of reasonably effective assistance. *Id*. In order

to prevail on an ineffective assistance of counsel claim, a petitioner must overcome the

presumption that counsel's challenged actions might be considered sound trial strategy. *Id*. "A

fair assessment of attorney performance requires that every effort be made to eliminate the

distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct,

and to evaluate the conduct from counsel's perspective at the time." *Id*.

The second prong of the *Strickland* test requires a showing of actual prejudice related to

counsel's performance. In order to establish prejudice, a petitioner "must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

REPORT AND RECOMMENDATION - 39

1    would have been different.  A reasonable probability is a probability sufficient to undermine

2    confidence in the outcome." *Strickland*, 466 U.S. at 694.

3            The Court of Appeals in petitioner's personal restraint proceedings rejected the

4    ineffective assistance of counsel claims which are properly before this Court for review on the

5    grounds that petitioner failed to demonstrate any prejudice.  (*See* Dkt. No. 18, Ex. 10 at 6-7.)

6    With respect to petitioner's claims of ineffective assistance of counsel arising out of counsel's

7    failure to object to the instances of alleged prosecutorial misconduct, the acting chief judge

8    explained that the claims failed "[b]ecause the standard for showing prejudice is essentially the

9    same for ineffective assistance of counsel as for prosecutorial misconduct and because it has

10   already been determined that Tobey did not demonstrate prejudice from the alleged prosecutorial

11   misconduct, these particular claims of ineffective assistance of counsel must fail as well." (*Id*.,

12   Ex. 10 at 7.)

13           Petitioner argued to the Washington Supreme Court in his motion for discretionary

14   review that the Court of Appeals erred in dismissing his ineffective assistance of counsel claims

15   because it applied the wrong prejudice standard to the claims.  (*See id*., Ex. 11 at 16-18.)  The

16   Supreme Court commissioner did not address petitioner's ineffective assistance of counsel claim

17   as it pertained to the prosecutor's examination of the detective and her alleged comment on

18   petitioner's right to silence.  As to the claim regarding counsel's failure to object to the

19   prosecutor misstating the burden of proof and the jury's role, the commissioner concluded that

20   petitioner had not shown that if counsel had objected there was a reasonable probability that the

21   result of the trial would have been different.  (*Id*., Ex. 12 at 3.)

22           Petitioner argues here that the state courts improperly supplanted *Strickland*'s reasonable

23   probability standard with an "actual and substantial preponderance of the evidence" standard.

REPORT AND RECOMMENDATION - 40

1   (Dkt. No. 29 at 75.)  Petitioner argues that the state court's decision was therefore contrary to

2   *Strickland* and, thus, that this Court is not constrained by § 2254(d).

3           A review of the Washington Supreme Court's ruling makes clear that the commissioner

4   applied the correct standard to petitioner's ineffective assistance of counsel claim as it pertained

5   to misstating the jury's role and reasonably concluded that petitioner had not established any

6   prejudice.  As to the remaining exhausted portions of petitioner's ineffective assistance of

7   counsel claim, even if, as petitioner argues, this Court is not constrained by § 2254(d), the claims

8   fail on the merits because petitioner has not established that there is a reasonable probability the

9   result of the trial would have been different if counsel had objected to the detective commenting

10  on his right to silence and/or to the prosecutor's alleged misconduct in eliciting the objectionable

11  testimony from the detective.  Accordingly, petitioner's federal habeas petition should be denied

12  with respect to the exhausted portions of his twelfth ground for relief.

13                          Ineffective Assistance of Appellate Counsel

14          Petitioner asserts in his fifteenth ground for relief that his appellate counsel rendered

15  ineffective assistance when she failed to adequately investigate the trial transcripts, failed to

16  adequately raise and argue prosecutorial misconduct, and failed to argue that trial counsel was

17  ineffective for his repeated failure to object to instances of prosecutorial misconduct.  As

18  explained above, petitioner has properly exhausted this claim only with respect to his claims that

19  appellate counsel rendered ineffective assistance when she failed to raise on direct appeal trial

20  counsel's (1) failure to object to the detective's violation of his right to silence, (2) failure to

21  object to the prosecutor's alleged misconduct in eliciting the objectionable testimony from the

22  detective, and (3) failure to object to the prosecutor misstating the burden of proof and the jury's

23  role.

REPORT AND RECOMMENDATION - 41

The Fourteenth Amendment guarantees a criminal defendant pursuing a first appeal as of right from his criminal conviction the assistance of counsel. *Douglas v. California*, 372 U.S. 353 (1963). This right to counsel comprehends the right to effective assistance of counsel. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Claims of ineffective assistance of appellate counsel are evaluated under the two-prong test set forth in *Strickland*. *See, e.g., Smith v. Murray*, 477 U.S. 527, 535-36 (1986); *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996).

The Washington Court of Appeals, in petitioner's personal restraint proceedings, rejected petitioner's ineffective assistance of appellate counsel claim on the grounds that petitioner failed to show any prejudice resulting from the alleged errors. The court explained that the claim necessarily failed because petitioner's "claim of ineffective assistance of appellate counsel essentially recasts, without adding substance to, his frivolous arguments" offered in support of his ineffective assistance of trial counsel claims. (Dkt. No. 18, Ex. 10 at 10.) Indeed, because petitioner's ineffective assistance of trial counsel claims fail, his related ineffective assistance of appellate counsel claims necessarily fail as well. Petitioner's federal habeas petition should therefore be denied with respect to his fifteenth ground for relief.

Cumulative Error

Petitioner asserts in his seventeenth ground for relief that the cumulative effect of the trial court's error deprived him of a fair trial. Even where no single error rises to the level of a constitutional violation, "the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007).

The Washington Court of Appeals rejected petitioner's cumulative error claim in petitioner's personal restraint proceedings, concluding that petitioner's "claim that his trial was

REPORT AND RECOMMENDATION - 42

1   fundamentally unfair is patently frivolous." (Dkt. No. 18, Ex. 10 at 12.)  This determination was

2   entirely reasonable.  The only actual error established by petitioner was in the prosecutor's

3   remark during closing argument that the "[t]his girl who knows that what she is saying is getting

4   this man in trouble is either telling the truth or she is evil."  This error was clearly harmless.  As

5   petitioner fails to establish that multiple errors occurred, his claim of cumulative error must also

6   fail.  Accordingly, petitioner's federal habeas petition should be denied with respect to his

7   seventeenth ground for relief.

8                                        Certificate of Appealability

9         A petitioner seeking post-conviction relief under § 2254 may appeal a district court's

10  dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA)

11  from a district or circuit judge.  A certificate of appealability may issue only where a petitioner

12  has made "a substantial showing of the denial of a constitutional right."  See 28 U.S.C. §

13  2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could

14  disagree with the district court's resolution of his constitutional claims or that jurists could

15  conclude the issues presented are adequate to deserve encouragement to proceed further."

16  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

17        Under this standard, this Court concludes that petitioner is entitled to a certificate of

18  appealability with respect to his third ground for relief (misstating the jury's role) and his fourth

19  ground for relief (vouching for the credibility of witnesses).  Petitioner is not entitled to a

20  certificate of appealability with respect to any of the remaining claims for relief asserted in his

21  petition for writ of habeas corpus.

22  //

23  //

REPORT AND RECOMMENDATION - 43

CONCLUSION

For the reasons set forth above, this Court recommends that petitioner's petition for writ of habeas corpus be denied and that this action be dismissed with prejudice.  This Court further recommends that a certificate of appealability be granted with respect to petitioner's third and fourth grounds for relief and denied with respect to all remaining claims asserted in the petition. A proposed order accompanies this Report and Recommendation.

DATED this 30th day of April, 2013.

_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 44